

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 2 1 2015

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

PHILLIP TURNER, et al.　　　　§
　　　Plaintiffs,　　　　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 4:15-cv-824-A
　　　　　　　　　　　　　　　§
LIEUTENANT DRIVER, et al.,　　§
　　　Defendants.　　　　　　　§

---

## DEFENDANT OFFICER GRINALDS'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
## AND BRIEF IN SUPPORT THEREOF

---

Kenneth E. East
State Bar No. 00790622
FOSTER & EAST
9001 Airport Freeway, Suite 675
North Richland Hills, Texas  76180
(817) 788-1111
Fax:  (817) 485-2836
ken1@airmail.net

ATTORNEY FOR DEFENDANT
OFFICER GRINALDS, Badge 3825

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. The Battousai . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. Attacks on Police and Police Stations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C. Plaintiff's Claims in this action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. PLAINTIFF'S LEGAL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.     Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          1.     Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          2.     Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.     Defendant had the right to detain Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.     The duration of the detention was reasonable,
          and Plaintiff was never arrested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.     Defendant's conduct did not violate the Fourteenth Amendment . . . . . . . . . . . 14

    E.     Plaintiff's excessive force claim, if any, fails . . . . . . . . . . . . . . . . . . . . . . 15

    F.     Plaintiff's claims under the First Amendment fail . . . . . . . . . . . . . . . . . . . 17

    G.     Plaintiff's Declaratory Judgment Act claims should be dismissed . . . . . . . . . . 19

V. CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**Cases:**

Adams v. May, 903 F. Supp. 2d 433 (S.D. Miss. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Adams v. Williams, 407 U.S. 143 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) . . . . . . . . . . . . . . 8

Ashcroft v. Iqbal, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Baker v. Smiscik, 49 F. Supp. 3d 489 (E.D. Mich. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Brumfield v. Hollins, 551 F.3d 322(5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.,
435 F.3d 396 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Carter v. Gusman, CIV.A.-09-4158, 2010 WL 819615 (E.D. La. Mar. 3, 2010) . . . . . . . . . . . 12

Crawford v. Geiger, 2015 WL 5569007 (N.D. Ohio Sept. 22, 2015) . . . . . . . . . . . . . . . . . . . . 18

Deville v. Marcantel, 567 F.3d 156 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Foster v. City of Lake Jackson, 28 F.3d 425 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Freeman v. Gore, 483 F.3d 404 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Glenn v. City of Tyler, 242 F.3d 307 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Gonzalez v. Huerta, 103 F. Supp. 3d 840 (S.D. Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Graham v. Connor, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Guide v. City of Chicago, 89 C 2228, 1990 WL 103198 (N.D. Ill. July 19, 1990) . . . . . . . . . . 15

Gutierrez v. City of San Antonio, 139 F.3d 441 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 15

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Haynie v. County of Los Angeles, 339 F.3d 1071 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 14

Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640 (1981) . . . . . . . . . . . . . . 17

Hiibel v. Sixth Judicial District Court, 542 U.S. 177 (2004) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Hunter v. Bryant, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Malley v. Briggs, 475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mansfield SEQ. 287 & Debbie Ltd. v. Citibank, N.A., 3:10-CV-2204-L,
    2011 WL 3471315 (N.D. Tex. Aug. 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Martin v. City of Alexandria Municipality Police Dept., CIV-A-03-1282,
    2005 WL 4909292 (W.D. La. Sept. 16, 2005), aff'd sub nom.
    Martin v. City of Alexandria, 191 Fed. Appx. 272 (5th Cir. 2006) . . . . . . . . . . . . . . . . 10

Minnesota v. Dickerson, 508 U.S. 366 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Montgomery v. Killingsworth, 2015 WL 289934 (E.D. Penn. Jan. 22, 2015) . . . . . . . . . . . . . 18

Mullenix v. Luna, 136 S. Ct. 305 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Norris v. Hearst Trust, 500 F.3d 454 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pearson v. Callahan, 555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Regus Mgmt. Group, LLC, v. Int'l Bus. Mach. Corp., CIV.A.3:07-CV-1799-B,
    2008 WL 2434245 (N.D. Tex. June 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Stephenson v. McClelland, 15-20182, 2015 WL 8017426 (5th Cir. Dec. 4, 2015) . . . . . . . . . . 17

Szymecki v. Houk, 353 Fed. Appx. 852 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tarver v. City of Edna, 410 F.3d 745 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Terry v. Ohio, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13, 14

Torns v. City of Jackson, 14-60339, 2015 WL 4774402 (5th Cir. Aug. 14, 2015) . . . . . . . . . . . 9

United States v. Bullock, 632 F.3d 1004 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. v. Maltais, 403 F.3d 550 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U. S. v. Silva, 957 F.2d 157 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Sharp, 470 U.S. 675 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Williams v. Boggs, 2014 WL 585373 (E.D. KY Feb. 13, 2014) . . . . . . . . . . . . . . . . . . . . . . 18

**Constitutional Provisions:**

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 7, 17, 18

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 15, 16

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

**Statutes:**

28 U.S.C. § 220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 16

Tex. Pen. Code § 38.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Rules:**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 19

Fed. R. Civ. P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Officer Grinalds, Badge 3825, files this his Motion to Dismiss for Failure to State a Claim. He would respectfully show the Court the following.[1]

## I. **SUMMARY**

Plaintiff Phillip Turner and a band of like-minded cohorts apparently are endeavoring to become professional plaintiffs, regularly conducting what they describe to be "First Amendment audits" of secure public safety facilities by taking videos of the facilities' security measures and hoping to lure concerned public safety officials into crossing some claimed line so that they may then pursue monetary reward through litigation in which they seek damages for their claimed hurt feelings.

Plaintiff's conduct is especially distasteful in this case. By suspiciously pacing outside a Fort Worth police station and filming the building's security gate and the private vehicles of police

---

[1] Throughout this motion, Defendant Grinalds will refer to various readily-accessible online news articles. Defendant asks the Court to take judicial notice of these items as well as the existence of the highly-publicized events they describe, many of which likely are already familiar to the Court. The news articles are presented as being indicative of what was in the public realm at the relevant time and not for the truth of any specific details within the articles. Defendant also cites public websites and court filings in other cases. Although this motion is brought pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, and rule 12(d) provides that if matters outside the record are presented with a rule 12(b)(6) motion and not excluded by the court, the motion should be treated as one for summary judgment, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." Norris v. Hearst Trust, 500 F.3d 454, 461 (5th Cir. 2007); see also Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P., 435 F.3d 396, 401 (3d Cir. 2006) ("We see no basis to upset the District Court's decision to take judicial notice of newspaper articles [presented with movant's 12(b)(6) motion to dismiss]. . . . They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."). If, however, Defendant Grinalds has somehow misconstrued the law in this regard, and the Court finds that considering any of these matters would necessarily convert this motion into one for summary judgment, Defendant asks that the Court simply exclude the items from its consideration of this motion.

officers entering and leaving it, Plaintiff was apparently seeking to capitalize on the reasonable and understandable heightened fear and apprehension all local law enforcement officials were feeling at the time--just three days after the ambush and cold-blooded assassination of a sheriff's deputy in Houston,[2] just weeks after a highly-planned, vicious assault on the Dallas Police headquarters in which the assailant used an armored vehicle, a semi-automatic rifle, and bags full of pipe bombs,[3] and just months after a rampage in Austin in which an assailant fired an estimated 100 rounds of ammunition at the Austin Police headquarters and various other downtown buildings, including the federal courthouse.[4]  In fact, the very day before Plaintiff set out to bait Fort Worth officers into a confrontation he now hopes to exploit for financial gain, headlines across the state focused on the security issues facing police and police facilities, such as "N. Texas police stations look to add security after Goforth murder"[5] and "Calls for added police security after Houston murder."[6]

Here, Defendant Officer Grinalds did not violate Plaintiff's constitutional rights.  Moreover, there is no clearly established law (certainly not in a sufficiently particularized sense) to which

---

[2] http://www.chicagotribune.com/news/nationworld/ct-houston-police-officer-killed-20150830-story.html

[3] http://www.cnn.com/2015/06/13/us/dallas-police-headquarters-shooting/

[4] http://kxan.com/2014/11/28/austin-police-shut-down-city-streets-for-active-shooter-investigation/

[5] http://www.khou.com/story/news/local/texas/2015/08/31/n-texas-police-stations-look-add-security-after-goforth-murder/71446622/

[6] http://www.wfaa.com/story/news/local/2015/08/30/after-houston-incident-ntx-police-call--added-safety/71440482/  As an example of the heightened state of police concern across the entire nation at the time, in fact, see http://supicket.com/news/2015/09/11/local-law-enforcement-officers-remain-vigilant-after-attacks/
(citing the Houston tragedy, among others: "We use the term vigilant...we have to be hyper-vigilant," said Jefferson County Sheriff Pete Dougherty. "These despicable acts make our jobs more difficult.").

Plaintiff can point in order to demonstrate that Defendant violated any federally protected right of his, and Officer Grinalds is, therefore, entitled to qualified immunity from Plaintiff's claims.

## II. BACKGROUND

### A.    The Battousai

Plaintiff Phillip Turner refers to himself as "The Battousai," which apparently is the name of a particular anime assassin in a Japanese cartoon series.[7]  As the Battousai, Mr. Turner spends his (apparently considerable) free time trying to entrap police officers across the state of Texas into detaining him by intentionally recording secure public safety facilities in hopes that some concerned officer will notice and want to know what he is doing. According to published reports, Mr. Turner describes his actions as conducting "First Amendment Audits."  As Turner explains it:  "It's no different from police officers setting up drug stings and prostitution stings to see if citizens will break the law. . . . I test to see if officers are knowledgeable on the law, to see if the officers will also follow the law and the department policies they have in place for these officers. There's been a lot of animosity against police officers, with people saying they don't follow the law.  I go in, and I try to confirm it."[8]

If Phillip Turner gets lucky, and a concerned officer notices his activities and seeks to ascertain what he is doing, Mr. Turner's modus operandi is to intentionally refuse the officer's

---

[7]    see  http://www.urbandictionary.com/define.php?term=Battousai; https://en.wikipedia.org/wiki/Himura_Kenshin

[8]

http://www.mystatesman.com/news/news/crime-law/man-who-recorded-round-rock-police-sues-alleging-u/npBHT/

simple requests for his identity and for any explanation of what he is doing. His ploy is to hope that an officer conducting an investigation will then eventually detain or arrest him for failing to identify himself. If this happens, Mr. Turner files a federal lawsuit against the officer. See, e.g., Phillip Turner v. Sergeant M. Osborn, et al., Civil Action No. 1:15-cv-939 (W. Dist. Tex.) (lawsuit against City of Round Rock police officers).

Mr. Turner has even more lawsuits in the works. Mr. Turner posts his numerous "First Amendment audits" on his YouTube page.[9] There he claims (as of three weeks ago) that "I'm waiting on my lawyer to finish up on his end so we can file some lawsuits."[10] His lawyer, Kervyn Altaffer, apparently represents other like-minded crusaders, as well, and is willing to file effectively identical lawsuits on their behalf. See, e.g., Brett Michael Sanders v. Lieutenant Mike Vincent, et al., Civil Action No. 3:15-cv-2782-D (N. Dist. Tex.) (lawsuit against City of Addison police officers).

Mr. Turner as the Battousai is also an independent "correspondent" for the national movement that promotes antics such as his. An organization called, "Photography is Not a Crime" or "PINAC" encourages such activities nationwide through its website. In recently-posted PINAC articles, the organization hails Mr. Turner as a hero for having loudly played "NWA's Fuck the Police" during a September 2015 traffic stop of him by police officers in Arlington, Texas.[11]

---

[9] https://www.youtube.com/user/TheBattousai1776/featured

[10] https://www.youtube.com/user/TheBattousai1776/discussion

[11]
https://photographyisnotacrime.com/2015/10/texas-man-plays-fuck-the-police-for-cops-who-pulled-him-o v e r - f o r - r e t a l i a t o r y - p u r p o s e s - w h i l e - r e m a i n i n g - s i l e n t /   ;
https://photographyisnotacrime.com/2015/11/galveston-police-arrest-pinac-correspondent-for-recording-

B.     **Attacks on Police and Police Stations**

Amid highly-publicized growing tensions and reported animosity toward police, in the year 2014, deadly attacks with firearms on police officers increased *56 percent* over the previous year.[12] Such killings were not confined to more typical scenarios of a suspect resisting arrest, and attacks came to include outright assaults on police facilities.   In fact, according to the National Law Enforcement Officers Memorial Fund, of the 2014 fatalities, the leading cause of officers' deaths came from outright ambushes.[13]

As just a few highly-publicized examples, as discussed in the Summary, above, on November 28, 2014, a crazed assailant fired more than 100 rounds of ammunition into public buildings in downtown Austin, including the Austin Police headquarters and the federal courthouse. See note 4, supra.  On June 13, 2015, an attacker launched an apparently pre-planned, military-style assault on the Dallas Police headquarters, using an armored vehicle, high-caliber weapons, and pipe bombs. See note 3, supra. On August 28, 2015, a gunman ambushed, shot, and killed Harris County Sheriff's Deputy Darren Goforth while the peace officer was in uniform, putting gas into his patrol car. See note 2, supra.

The level of concern police officers had on the date of the incident made the basis of this lawsuit is exemplified by news articles published the very day before, which describe efforts police

---

officer-memorial/

[12]

http://www.nbcnews.com/news/crime-courts/u-s-police-officer-shooting-deaths-56-percent-2014-report-n 276811

[13] http://www.nleomf.org/assets/pdfs/reports/Preliminary-2014-Officer-Fatalities-Report.pdf

departments locally, and nationwide, were in the process of implementing to further secure police facilities. See n. 6, supra.

**C.      Plaintiff's claims in this action**

In his Original Complaint (Doc. No. 1) in this case, Plaintiff describes his "First Amendment audit" of the Fort Worth Police on September 1, 2015. See Compl. at 3.  Plaintiff claims that on that day he was "walking on the sidewalk across the street from the Fort Worth Police Station located at 1100 Nashville Ave. . . . . videotaping the station and the activity at the station . . . ." According to Plaintiff's allegations, an officer who had driven out of the secure, gated facility had "called in" about Turner's suspicious behavior.  Compl. at 5 ¶ 27.

Plaintiff claims that shortly thereafter Defendants Officers Grinalds and Dyess parked their patrol car in front of the station, exited the car, and approached Plaintiff.  Id. at 4.  Plaintiff claims that Officer Grinalds approached him and said, "How's it going man?"  Id.  Officer Grinalds then, Plaintiff alleges, asked him for identification.  Id.  Plaintiff explains that he refused the officer's requests, interrogated the officer, and questioned his motives.  Id.  Plaintiff states that Officer Grinalds explained he was simply concerned about what Turner was doing and that the police have some concern about "who's surrounding our complexes."  Id.  Officer Grinalds eventually explained to Plaintiff that he was being detained while the officers investigated the situation.  Id.

Plaintiff states in essence that he tried to goad Officer Grinalds into arresting him, asking, "What happens if I don't ID myself?"  Id. at 5.  Officer Grinalds assured him that he was not being presently being accused of a crime, that he was only being detained for investigation, and that in response to Plaintiff's question about refusing to identify himself, that "We'll cross that bridge when we come to it."  Clearly all Officer Grinalds was trying to do even by Plaintiff's own allegations was

to ascertain Plaintiff's identity and investigate whether Plaintiff's activities were innocent or nefarious.

Plaintiff asserts that he continued to refuse to identify himself until the officers eventually placed him in handcuffs and sat him in the back of a police car while they called a supervisor. Plaintiff never alleges that he was told he was under arrest or transported from the scene. After a lieutenant (Defendant Driver) arrived and interviewed Plaintiff, the officers released Plaintiff from their custody. Compl. at 7 ¶ 42. Plaintiff never alleges how long he was detained, but nothing he alleges could lead one to conclude it was very long or an unreasonable length of time.

Mr. Turner complains that it was humiliating for him to be detained in public. Id. at 7 ¶ 45.

## III. PLAINTIFF'S LEGAL CLAIMS

Plaintiff claims that his detention violated the First, Fourth, and Fourteenth Amendments to the Constitution. He may possibly also be asserting a claim for alleged excessive force. He seeks damages and a declaratory judgment.

## IV. ARGUMENT AND AUTHORITIES

### A. Legal Standards

#### 1. Motion to Dismiss

Defendant Grinalds moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if plaintiff's pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendant is entitled to have the claims against her dismissed unless the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. (citations omitted). That is, even though at the motion to dismiss stage a plaintiff's well-pleaded facts are to be accepted as true, "bare assertions" and "conclusory" allegations "are not entitled to the assumption of truth." Id. at 682. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (citations omitted). In other words, allegations that are "no more than conclusions . . . are not entitled to the assumption of truth." Id. at 679.

### 2. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Public officials sued in their individual capacities, in fact, are presumed to enjoy qualified immunity, which is an immunity from the lawsuit itself, not merely from liability. Hunter v. Bryant, 502 U.S. 224, 227 (1991). Qualified immunity is the rule, not the exception. Houston v. Tucker, 137 F.Supp.2d 1326, 1334 (N.D. Ga. 2000) (citing Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)); see also Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994) ("Abrogation of qualified immunity is properly the exception, not the rule."). A plaintiff "has the burden to negate the [qualified immunity] defense once properly raised." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S.Ct.

2074, 2080, 179 L.Ed.2d 1149 (2011) (quoting Harlow, 457 U.S. at 818 (1982)). "A constitutional right is clearly established for the purposes of section 1983 only if the law is clear enough such that 'a reasonable official would understand that what he is doing violates that right.'" Kovacic v. Villarreal, 628 F.3d 209, 213 (5th Cir. 2010) (quoting, Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Its protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, 555 U.S. 223 (2009) (citation omitted).

"To surmount this barrier at the motion to dismiss stage, the plaintiffs 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [they have] alleged and that defeat a qualified immunity defense with equal specificity.'" Torns v. City of Jackson, 14-60339, 2015 WL 4774402, at *1 (5th Cir. Aug. 14, 2015) (citing Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)).

Here, Officer Grinalds is entitled to qualified immunity. Even accepting Plaintiff's well-pleaded facts as true, Officer Grinalds was a public official, performing discretionary duties within the course and scope of his authority and in so doing he acted reasonably and violated none of Plaintiff's clearly established federal rights.

## B. Defendant had the right to detain Plaintiff

A police officer may lawfully detain a citizen to investigate suspicious activity. That is, one well-recognized exception to the requirement that a seizure of a person must be based on a warrant,

as "was recognized in Terry v. Ohio, 392 U.S. 1 (1968)," is "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." In such a circumstance, "the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (citing Terry, 392 U.S. at 30; Adams v. Williams, 407 U.S. 143, 145–146 (1972)).

The "presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992). "Factors that ordinarily would 'constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers[.]'" Martin v. City of Alexandria Municipality Police Dept., CIV-A-03-1282, 2005 WL 4909292, at *10 (W.D. La. Sept. 16, 2005), aff'd sub nom. Martin v. City of Alexandria, 191 Fed. Appx. 272 (5th Cir. 2006) (quoting United States v. Holloway, 962 F.2d 451, 459 (5th Cir. 1992)).

Here, considering the totality of the circumstances confronting Officer Grinalds, including that a call had been placed by another officer regarding Plaintiff, that Plaintiff was walking up and down a sidewalk apparently video-recording officers entering and leaving the police station through a security gate, and especially in light of the numerous recent, highly-publicized attacks on police, in general, and outright assaults on Texas police stations, specifically, it was more than reasonable for an officer to seek to investigate the situation.

In any event, Grinalds is immune from the claim. Certainly, Plaintiff can point to no clearly established law that makes it so clearly unlawful for Officer Grinalds to have detained Plaintiff

under sufficiently similar circumstances that the matter is beyond debate. For a law to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Ashcroft, 563 U.S. at 741).

As the Supreme Court recently emphasized:

> We have repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.

Mullinix, 136 S.Ct. at 308.

More specifically, "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, **in order to determine his identity** or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams, 407 U.S. 143, 145–46 (1972) (emphasis added). Here, given the recent attacks on police and police stations, the call made by the officer leaving through the secure gate, and Plaintiff's conduct, Officer Grinalds had reasonable suspicion to investigate the situation. Initially, he simply approached Plaintiff and began a conversation, a purely consensual encounter. Before the consensual encounter and based on the facts above, Grinalds had reasonable suspicion to investigate, but Plaintiff's evasive responses to Officer Grinalds's innocuous questions heightened his concern, and he found it necessary to exercise his authority to detain Plaintiff for investigatory purposes. See

Gonzalez v. Huerta, 103 F. Supp. 3d 840 (S.D. Tex. 2015) ("The tip from a school employee, the history of recent car burglaries in the same parking lot, **Gonzalez's refusal to show his identification or explain his presence**, and the placement and orientation of his car gave Huerta reasonable suspicion that justified detaining Gonzalez for further investigation.") (emphasis added); Baker v. Smiscik, 49 F. Supp. 3d 489, 498 (E.D. Mich. 2014) ("And Plaintiff's refusal to assist with the officers' investigation—by failing to identify himself or produce identification—only compounded the concern that Plaintiff may be engaged in a criminal activity."); Carter v. Gusman, CIV.A.-09-4158, 2010 WL 819615, at *7 (E.D. La. Mar. 3, 2010) ("Actions that may heighten a law enforcement officer's suspicions . . . . include a suspicious person's evasive . . .answers.").

Officer Grinalds's initial detention of Plaintiff was lawful, and Grinalds is entitled to qualified immunity from the claim.

## C.   The duration of the detention was reasonable, and Plaintiff was never arrested

An investigative detention must not only be reasonable at its inception, it must also be "reasonably related in scope and duration to the circumstances justifying the stop." Terry, 392 U.S. at 19–20.   Here the brief (unpleaded) duration of the detention was reasonable, especially considering Plaintiff's continued effort to impede the investigation by his refusal to identify himself. As the Supreme Court has explained, obtaining a suspect's name in the course of an investigative stop "serves important government interests" by (I) informing "an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder" or (ii) helping "clear a suspect and allow the police to concentrate their efforts elsewhere." Hiibel v. Sixth Judicial District Court, 542 U.S. 177, 186 (2004).   In Hiibel, the Court upheld as constitutional Nevada's criminal statute regarding failure to identify.   The Nevada law made it a crime for a suspect to refuse to identify him

or herself even if the suspect was only being detained and not yet under arrest. Id. The Texas failure to identify statute, however, makes it a crime to refuse to identify only if the suspect is already under arrest. Tex. Pen. Code § 38.02.

In reaching its decision the Supreme Court in Hiibel reiterated that its "decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many Terry stops." 542 U.S. at 186. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Id. (quoting Adams, 407 U.S. at 146). The Court upheld the Nevada law, finding that because the "request for identity has an immediate relation to the purpose, rationale, and practical demands of a Terry stop . . . "the threat of criminal sanction" was constitutional in that it "helps ensure that the request for identity does not become a legal nullity." The case, however, does not answer the question of what an officer may do in a state that does not have a similar statute. In other words, while it is clear that seeking a suspect's identity during a Terry stop is lawful, it is not clear what options an officer has if a suspect refuses the request. Without clearly established law to guide him, therefore, Officer Grinalds acted reasonably in viewing Plaintiff's refusal to cooperate as justifying continuing the detention long enough to call a supervisor and explore his options.

Moreover, that Plaintiff was handcuffed and briefly detained does not automatically mean he was under arrest and no longer simply being detained for investigative purposes. See, e.g., United States v. Bullock, 632 F.3d 1004, 1016 (7th Cir. 2011) (handcuffing and transporting suspect a short distance held not to change a lawful detention into a de facto arrest and reasoning that "even though officers patted down Bullock and did not discover any weapons, the officers could take precautions

against potentially violent behavior."); Haynie v. County of Los Angeles, 339 F.3d 1071, 1077 (9th Cir. 2003) ("The fact that Haynie was handcuffed and placed in the rear of a police car for 16 to 20 minutes did not become a de facto arrest.") (citing United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir. 1982) ("A brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a Terry stop and does not necessarily convert the stop into an arrest.")).

Indeed, the Supreme Court recognizes there is no rigid time limit on the duration of an investigatory detention. U.S. v. Sharp, 470 U.S. 675, 685 (1985). When considering whether a period of time is excessive, the Courts consider the law enforcement purposes to be served by the stop, as well as the time reasonably needed to effectuate those purposes. U.S. v. Maltais, 403 F.3d 550 (8th Cir. 2005). In the Maltais case, the Court held that detaining a suspect for two hours and 55 minutes in the back of a patrol car while waiting for a drug dog to arrive was not such a long duration as to be unreasonable and constitute an arrest without probable cause.

Plaintiff's suspicious conduct and the reason for the investigation (i.e., to determine if Plaintiff intended harm to police officers), particularly combined with the recent events involving attacks on police facilities, and his refusal to cooperate with the officers' simple desire to obtain his identity, justified Officer Grinalds briefly securely detaining him until Grinalds could consult with a superior officer. Plaintiff's entire, brief detention was reasonable; Plaintiff cannot establish that it violated his clearly established rights; and Grinalds is entitled to immunity from the claims.

**D.** **Defendant's conduct did not violate the Fourteenth Amendment**

If Plaintiff is attempting to assert a claim directly pursuant to the Fourteenth Amendment, the claim must fail. Plaintiff was only ever briefly detained and released on the scene, as discussed above. All of his claims for unlawful detention or excessive force, therefore, are to be analyzed under the Fourth, not the Fourteenth, Amendment. Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998); see also Adams v. May, 903 F. Supp. 2d 433, 440 (S.D. Miss. 2012) ("Additionally, the Fourteenth Amendment's only relevance is its incorporation of the Fourth Amendment's guarantees . . . . Therefore, the Court analyzes Adams' Section 1983 claim solely as a Fourth Amendment issue."); Guide v. City of Chicago, 89 C 2228, 1990 WL 103198, at *1 (N.D. Ill. July 19, 1990) ("[W]e are not sure that plaintiff is attempting to pursue independent fourteenth amendment claims. We will simply note that the fourteenth amendment is only relevant insofar as it enables plaintiff to bring his fourth amendment claims . . . .").

**E.** **Plaintiff's excessive force claim, if any, fails**

Plaintiff fails clearly to articulate any excessive force claim, and for that reason alone any such potential claim should fail. Out of caution, however, his potential claims for excessive force will be addressed here.

Plaintiff complains that he felt hot for a brief period while he was initially seated in the police car (which had its air conditioner running) because, he alleges "no air was getting in the back." Compl. at 6. He then states that after signaling officers, they opened a window for him, but he claims he was left to sweat for "a while." Id. Plaintiff alleges nothing further regarding this complaint, and it is insufficient to state a claim.

Plaintiff's potential claims of excessive force are to be analyzed under the Fourth Amendment and its reasonableness standard. Graham v. Connor, 490 U.S. 386 (1989). To prevail on his Fourth Amendment excessive-force claim, Plaintiff must establish "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005). A claim for excessive force is separate and distinct from an unlawful arrest claim," and an excessive force claim must be analyzed "without regard to whether the arrest itself was justified." Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) ("Plaintiffs' § 1983 'excessive force claim is separate and distinct from [their] unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified.'") (quoting Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007)).

With respect to his complaint about briefly feeling too warm, the claim must fail. Plaintiff has not alleged an injury or any use of excessive force. Being uncomfortable inside a running, air conditioned vehicle does not rise to the level of a compensable constitutional injury. Although this circuit no longer requires plaintiffs to prove "significant injuries" in support of their excessive force claims, it does require that a plaintiff have suffered at least some form of injury, and the injury must be more than de minimis. Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005); Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001).

Similarly, Plaintiff's only other potential complaint of excessive force is that in passing he claims, the officers "put handcuffs on him using excessive force and hurting Mr. Turner's wrist." Compl. at 5 ¶ 23. That is the extent of his claim, and it is patently insufficient to state a claim for excessive force. Even if Plaintiff's wrists had been bruised from the handcuffs--which Plaintiff

certainly does not claim--that still would not be enough.  "We have previously held that bruising as a result of handcuffing too tightly, without more, does not amount to excessive force." Stephenson v. McClelland, 15-20182, 2015 WL 8017426, at *5 (5th Cir. Dec. 4, 2015) (citing Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001)); accord Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force.").

To the extent Plaintiff is attempting to bring any claims for excessive force, the claims fail, and Defendant Grinalds is immune from them.

## F.      Plaintiff's claims under the First Amendment fail

As the Supreme Court has made clear, "It is . . . common ground . . . that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981).  Here, Plaintiff claims that he had an unfettered right to video record the security gate of the Fort Worth police station and to video record the officers entering and leaving through it.  But because , as discussed above, it was reasonable for officers to detain Plaintiff to investigate his suspicious activity in light of the totality of the circumstances known to them and in light of Plaintiff's continuing refusal to cooperate with their investigation, any argument that his speech rights motivated the officers' conduct must fail as a matter of law.  See Stephenson v. McClelland, 15-20182, 2015 WL 8017426, at *4 (5th Cir. Dec. 4, 2015) (citing Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008)).

Moreover, it is not clearly established law that one has the right to video record all police activities under all circumstances, i.e., there appear to be no Fifth Circuit cases directly on point, and

a number of out of circuit cases hold that there is no such right or that such a right is not yet clearly established. See, e.g., Crawford v. Geiger, 2015 WL 5569007 at pp. 8-9 (N.D. Ohio Sept. 22, 2015) ("The Supreme Court and Sixth Circuit have not ruled specifically on the right of the public openly to film police officers and their actions in a public setting. . . . In light of the as yet unsettled constitutional status of the ability, without fear of arrest, to record what one can otherwise lawfully see and hear, I uphold the claim of qualified immunity vis-a-vis the First Amendment claim in this case.") (citing Kelly v. City of Carlisle, 622 F.3d 248, 262 (3rd Cir. 2010); Szymecki v. Houk, 353 Fed. Appx. 852, 853 (4th Cir. 2009) ("Here, the district court concluded that Szymecki's asserted First Amendment right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct. We have thoroughly reviewed the record and the relevant legal authorities and we agree."); Montgomery v. Killingsworth, 2015 WL 289934 at pp. 14-15 (E.D. Penn. Jan. 22, 2015) ("Given this pre-existing and recent Third Circuit case law, Montgomery and Loeb did not have a clearly established right to record police officers while they were performing their duties in public. . . . Indeed, "[i]f judges ... disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."); Williams v. Boggs, 2014 WL 585373 at p. 5 (E.D. KY Feb. 13, 2014) ("With no controlling authority and competing holdings from other circuits, it is not reasonable to say that an officer would have fair notice that preventing the recording of a traffic stop would violate the First Amendment right to film police.").

### G.     Plaintiff's Declaratory Judgment Act claims should be dismissed

For the reasons stated above, even if the Court were to consider Plaintiff's claim for relief under the Declaratory Judgment Act separate from his other claims for damages herein, the claim must fail. But Court should dismiss Plaintiff's declaratory judgment action regardless. "The Court has broad discretion in determining whether to entertain a declaratory judgment action under 28 U.S.C. § 220." Regus Mgmt. Group, LLC, v. Int'l Bus. Mach. Corp., CIV.A.3:07-CV-1799-B, 2008 WL 2434245, at *2 (N.D. Tex. June 17, 2008) (citing Winton v. Seven Falls Co., 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (noting that the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.")).

"If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." Id. (citing Pan-Islamic Corp. v. Exxon Corp., 632 F.2d 539, 546 (5th Cir. 1980), Mandry v. Fina Oil & Chemical Co., 44 F.3d 1004, 1994 WL 733494 at *2 (5th Cir. 1994)). "In the Federal Rule of Civil Procedure 12(b)(6) context, courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit. Id. (citing cases); see also Mansfield SEQ. 287 & Debbie Ltd. v. Citibank, N.A., 3:10-CV-2204-L, 2011 WL 3471315, at *8 (N.D. Tex. Aug. 5, 2011) ("Further, the court believes that this claim is in essence duplicative of Plaintiff's breach of contract claim. Therefore, no claim for a declaratory judgment exists.").

### V. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, for the above-stated reasons, Plaintiff has failed to state a claim; Defendant Grinalds is immune from any alleged claims; and the claims should be

dismissed.  Defendant Grinalds, therefore, respectfully moves this Court to dismiss all of Plaintiff's claims and causes of action against him.  Defendant prays for all other relief to which he may be entitled.

<div style="margin-left: 40%;">

Respectfully submitted,

Kenneth E. East
State Bar No. 00790622
FOSTER & EAST
9001 Airport Freeway, Suite 675
North Richland Hills, Texas  76180
(817) 788-1111
Fax:  (817) 485-2836
ken1@airmail.net

ATTORNEY FOR DEFENDANT
OFFICER GRINALDS, Badge 3825

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2015, I served a copy of this document on the following parties or their counsel of record:

Kervyn B. Altaffer Jr.
Law Office of Kervyn B. Altaffer Jr.
4054 McKinney Ave., Suite 310
Dallas, Texas 75204
972-234-3633
Fax 972-947-3663
kervyn@altafferlaw.com

<div style="margin-left: 40%;">

Kenneth E. East

</div>