

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PHILLIP TURNER<br>**Plaintiff,** | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:15-cv-00824-A |
| LIEUTENANT DRIVER,<br>OFFICER GRINALDS, Badge 3825,<br>OFFICER DYESS, Badge 2586,<br>**Defendants** | §<br>§<br>§<br>§ | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Phillip Turner ["Mr. Turner"], complaining of Defendants, City of Fort Worth [Fort Worth], Lt. Driver, Officer Grinalds, and Officer Dyess, hereby files Plaintiff's First Amended Complaint and Jury Demand and respectfully shows the following:

### I.   NATURE OF THE ACTION

1.   This is a civil rights action for declaratory relief and damages arising under the Constitution of the United States and under the laws of the United States. Mr. Turner was lawfully exercising his First Amendment rights under the Constitution by using his video camera to observe and videotape activity of the City of Fort Worth, Texas, Police Department from a public sidewalk in daylight hours and in plain view, without interfering with traffic or with any activities of Fort Worth Police Department. This was not a crime. Nonetheless, Defendants treated Mr. Turner as if it were. Defendant Officers harassed, detained, assaulted, seized and arrested Mr. Turner without reasonable suspicion or probable cause merely because Mr. Turner was lawfully exercising his First Amendment rights by using his video camera to observe and videotape activity of the Fort Worth Police Department.

## II. DEMAND FOR JURY TRIAL

2. Plaintiff demands a trial by jury.

## III. PARTIES

3. Mr. Turner, an individual, is a black male citizen and adult resident of Texas, U.S.A.

4. The City of Fort Worth is an incorporated city and political subdivision of the State of Texas and manages, directs, and controls the Fort Worth Police Department, which employs the other Defendants. Service of Summons upon Defendant Fort Worth may be had by serving the City Secretary, Mary J. Kayser, City Hall, 1000 Throckmorton, Fort Worth, Texas 76102.

5. Defendant Lt. Driver is a Caucasian male individual citizen and adult resident of Texas and at all relevant times was employed by the City of Fort Worth as a Police Lieutenant. He is sued in his individual capacity and can be served with Summons at his work address at the City of Fort Worth Police Department, 1100 Nashville Ave, Fort Worth, Texas 76105, and has already entered an appearance in this matter.

6. Defendant Officer Grinalds, Badge No. 3825, is a Caucasian male individual citizen and adult resident of Texas and at all relevant times was employed by the City of Fort Worth as a Police Officer. He is sued in his individual capacity and can be served with Summons at his work address at the City of Fort Worth Police Department, 1100 Nashville Ave, Fort Worth, Texas 76105, and has already entered an appearance in this matter.

7. Defendant Officer Dyess, Badge No. 2586, is a Caucasian male individual citizen and adult resident of Texas and at all relevant times was employed by the City of Fort Worth as a Police Officer. He is sued in his individual capacity and can be served with Summons at his work address at the City of Fort Worth Police Department, 1100 Nashville Ave, Fort Worth, Texas 76105, and has already entered an appearance in this matter.

## IV. JURISDICTION

8. This action to vindicate Plaintiff's rights protected by the First, Fourth and Fourteenth Amendments to the U.S. Constitution is brought under 42 U.S.C. §§1983 and 1988. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 and 1343(a) (3) and (4). This Court also has jurisdiction under 28 U.S.C. §§2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

## V. VENUE

9. Venue is proper under 28 U.S.C. §1391(b) because one or more Defendants reside in the Northern District of Texas. Venue is also proper under 28 U.S.C. §1391(b) because all of the events or omissions giving rise to the claims occurred in the Northern District of Texas.

## VI. FACTS

### A. INTRODUCTION

10. At the time of the events, Mr. Turner was employed part-time and was a part-time student. Photography and videography are hobbies of Mr. Turner.

11. Mr. Turner decided to videotape the activity at the Fort Worth Police Department offices located at 1100 Nashville Ave, Fort Worth, TX 76105.

12. On September 1, 2015 during midday, Mr. Turner was walking on the public sidewalk across the street from the Fort Worth Police Station located at 1100 Nashville Ave, Fort Worth, Texas 76105 and he was videotaping the station and the activity at the station, which is within his First Amendment rights.

13. Mr. Turner was not violating any laws and was not acting suspiciously or furtively, as he was standing on the sidewalk in plain view wearing basketball shorts, a t-shirt, a hat, and sport shoes.

14. Mr. Turner was not armed with any weapon and was only carrying a video camera.

15. Mr. Turner **was not threatening anyone, neither by word nor action**.

16. Further, Mr. Turner was not interfering with traffic or with any activities of Fort Worth Police Department.

17. Mr. Turner was simply exercising his clearly established First Amendment rights to observe and videotape the routine activities at the Fort Worth Police Department building.

### B. POLICE HARRASSMENT AND DETENTION

18. At all times relevant to the acts alleged in this complaint, Defendants were acting under the color of the statutes, ordinances, regulations, customs, and usages of the City of Fort Worth and the State of Texas and the individual Defendants were acting under the authority of their respective offices as a police lieutenant and police officers.

19. While he was videotaping, Mr. Turner observed Officers Grinalds and Dyess drive up in a squad car and park on the same side of the street as the station, get out and cross the street and walk up to Mr. Turner. Officer Grinalds said to Mr. Turner "How's it going man?" and without giving Mr. Turner time to respond asked "Got your ID with you?"

20. Mr. Turner kept videotaping and Officer Grinalds repeatedly kept asking Mr. Turner if he had ID with him.

21. After several such questions, Mr. Turner calmly asked if he was being detained.

22. Officer Grinalds responded that Mr. Turner was being detained for investigation and that they were concerned about who was walking around with a video camera including stating "We like to know who's surrounding our complexes."

23. Officer Grinalds never explained how it was possible for one person with a video camera to "surround" the complex.

24. After the officers identified themselves, Officer Grinalds confirmed again that Mr. Turner was being detained, and Mr. Turner asked him for what crime he was being detained.

25. Officer Grinalds said "I didn't say you committed a crime," and continued stating that he had the right to detain Mr. Turner for investigation. "We have the right and authority to know who's walking around our facilities," said Officer Grinalds [apparently forgetting the fact that this is a free country] and resumed requesting Mr. Turner's ID until Mr. Turner asked, "What happens if I don't ID myself?" Officer Grinalds replied, "We'll cross that bridge when we come to it."

26. Mr. Turner said "But you have to tell me what happens if I don't ID myself."

27. Officer Grinalds said he did not have to tell Mr. Turner what would happen and continued with repeated requests for Mr. Turner's ID.

28. In response, Mr. Turner politely asked the officer if he was familiar with Texas Penal Code §38.02.

C.   **POLICE ASSAULT AND ARREST**

29. Mr. Turner, who was not armed, did not take any steps to leave or flee, did not make any threats against the Defendant Officers or anyone else, and did not take any aggressive actions to give the Defendant Officers any concern for possible bodily harm to themselves or anyone else.

30. Mr. Turner stated that he was not going to identify himself.

31. The two officers then suddenly without warning grabbed Mr. Turner and put handcuffs on him using excessive force and hurting Mr. Turner's wrist, effectively arresting him with no legal reason.

32. The officers took Mr. Turner's video camera away from him and turned it off.

33. Officer Grinalds said "This is what happens when you don't ID yourself."

34. Mr. Turner asked for a supervisor to come to the scene, which was right across the street from the station house.

35. On the video, the dispatch can be heard asking if Officer Grinalds is "in the parking lot with someone that was videotaping," to which Officer Grinalds can be heard falsely replying, "Yes, I am," when he was, in fact, not in the parking lot but instead on a sidewalk in front of the private residences across the street from the station.

36. Another voice believed to be the driver of a police car leaving the station can be heard off camera confirming that he was calling it in when he was coming out of the gate.

37. Officer Grinalds' voice can be heard off camera continuing to ask Mr. Turner for ID and saying, "you'll go on down and get fingerprinted then, so we know who you are."

38. The officers put Mr. Turner handcuffed into the back of their patrol car and left him there to sweat for a while with the windows rolled up and no air was getting in the back.

39. Mr. Turner was banging on the door to try to get them to open the windows.

40. Mr. Turner saw Lt. Driver come out and talk with the other Defendant Officers. They delayed and seemingly ignored Mr. Turner and left him to sweat for a while. Finally, the officers rolled the window down and Mr. Turner was lying down on the seat exhausted from the heat and the actions of the officers.

41. Lt. Driver came to the open window and identified himself and said that he was the commander.

42. Lt. Driver started asking Mr. Turner what he was doing and Mr. Turner told him that he was taking pictures from the sidewalk across the street.

43. Lt. Driver asked Mr. Turner if he had any ID on him and Mr. Turner said that he did not have to ID himself because he had not been lawfully arrested and that he chose not to freely give

his information. Lt. Driver replied to Mr. Turner, "You're right."

44. Lt. Driver left Mr. Turner in the back seat of the car and went back and talked with the other Defendant officers some more.

45. Lt Driver came back and talked with Mr. Turner some more.

46. Mr. Turner asked him why they were treating him like a criminal and said, "You guys need to let me go because I haven't done anything wrong."

47. Instead of replying to Mr. Turner's question, Lt. Driver walked away and began talking with the other officers some more and was also talking on the phone.

48. All three officers then came back to where Mr. Turner was sitting in the car, opened the door of the car, took Mr. Turner out of the car, and Lt. Driver started lecturing Mr. Turner.

49. Mr. Turner asked if he could get his property back and Lt. Driver told him not until they were finished talking to him.

50. Lt. Driver was saying things which appeared to be an attempt to justify his officers' actions.

51. Finally, the officers released Mr. Turner and gave him his camera back, even though he never produced his ID.

52. As Mr. Turner walked back across the street, Lt. Driver said the next time Mr. Turner stepped foot on their property he would be arrested for trespassing, even though Mr. Turner was not on the property of the station at the time of his filming, detention, and handcuffing, and the patrol car Mr. Turner was put into was parked on the street, not in the parking lot of the police station.

53. The officers never apologized or showed any concern whatsoever for Mr. Turner and his civil rights.

54. When Mr. Turner was handcuffed, he was on the public sidewalk in plain view during daylight hours for all persons driving by or arriving to observe.

55. Mr. Turner had to suffer the humiliation of being handcuffed and held in custody by multiple police officers as if he were a common criminal.

56. No actions of Mr. Turner would have provided a reasonable officer with reason to believe that the officer had legal cause to detain Mr. Turner, seize Mr. Turner with force and arrest Mr. Turner by placing him in handcuffs.

57. Upon information and belief, none of the Defendants had information in the form of objective facts that would have allowed a reasonable officer to initially detain or to seize and arrest Mr. Turner by handcuffing him.

### VII. ACTION AGAINST ALL DEFENDANTS UNDER 42 U.S.C. §1983 FOR VIOLATIONS OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS

58. Mr. Turner adopts by reference the facts and allegations set forth in paragraphs 1-57 as though fully set forth herein.

59. Observing public police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is expressive conduct protected by the First Amendment. This First Amendment right to gather information includes the right to record actions of police, subject to reasonable time, place, and manner restrictions. In this instance, Mr. Turner was standing on a public sidewalk videotaping apparently normal activities of the police during broad daylight from a public sidewalk, which activity is protected by the First Amendment to the United States Constitution.

60. Mr. Turner was not engaged in any unlawful activity or interfering with the duties of public police activities.

61. None of Mr. Turner's activities were being conducted in an unreasonable time, place or manner.

62. In fact, it is apparent from the actions of the officers and the statements made by the officers that the entire incident was an illegal attempt to "chill" Mr. Turner's First Amendment rights.

63. Defendants acting under color of law deprived Plaintiff of certain constitutionally protected rights as follows:

    a. Officers Grinalds and Dyess unlawfully initially detained Mr. Turner and demanded to see his identification without reasonable suspicion to believe that Mr. Turner had engaged in, was engaging in, or was about to engage in any criminal conduct;

    b. Officers Grinalds and Dyess unlawfully and unreasonably seized Mr. Turner using excessive force and arrested Mr. Turner by placing handcuffs on him without probable cause, without a warrant, without consent, and without exigent circumstances;

    c. Lt. Driver, after arriving at the scene, instead of immediately releasing Mr. Turner, continued the unlawful detention, seizure and arrest in public view in broad daylight without reasonable suspicion to believe that Mr. Turner had engaged in, was engaging in, or was about to engage in any criminal conduct and without probable cause, without a warrant, without consent, and without exigent circumstances;

    d. Lt. Driver issued Mr. Turner a criminal trespass warning when Mr. Turner had actually never voluntarily gone upon the property of the Police Station and had only been filming from the public sidewalk across the street; and

    e. Each of the foregoing actions was an illegal chilling of Mr. Turner's First Amendment rights to film the police.

64. Defendant Officers acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Turner's exercise of his clearly established rights protected by the First Amendment, Fourth Amendment and Fourteenth Amendment to the U.S. Constitution.

65. As a direct and proximate result of the Defendant's unlawful detention, seizure, and arrest, Mr. Turner sustained minor physical injuries. In addition, Mr. Turner sustained damages for pain and suffering, mental anguish, and other damages as pled herein.

66. Upon information and belief, Defendant Fort Worth is responsible for the violations of Mr. Turner's constitutional rights because the Defendant Officers' actions resulted from Fort Worth's deliberate indifference:

   a. in failing to formulate policies and procedures of providing for First Amendment rights or, if such policies and procedures existed, in failing to follow and enforce them;

   b. in chilling Mr. Turner's First Amendment Rights by custom allowing officers to illegally detain, handcuff and arrest individuals for their expressive conduct in videotaping police undertaking their official duties; or

   c. in failing to properly train and supervise officers who engage in such conduct.

67. Defendant Fort Worth should have either (a) established policies and procedures for its Police Department in line with the established law (1) as to whether a person can be detained or arrested for failure to provide his identification in accordance with Texas law and (2) whether a person can be detained or arrested merely for filming police activity or (b) should have prevented a custom from existing in which officers did not follow such policies, if they existed.

68. Fort Worth had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing/allowing policies and procedures or customs that created a substantial likelihood that citizens would be subjected to unlawful detention, seizure of

their person, or arrest by Fort Worth's Police Department officers for mere refusal to provide their identification.

69. Defendant Fort Worth should have established policies and procedures for its Police Department in line with the established law as to whether a person can be harassed, detained, seized, and arrested merely for videotaping the Fort Worth Police Department and the activities of its officers when the person is not interfering with any such activities or if such policies and procedures existed, should not have allowed a custom to exist in which officers did not follow them.

70. Fort Worth had a duty under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing to effect policies and procedures or customs that created a substantial likelihood that citizens would be subjected to unlawful harassment, detention, seizure, and arrest of their person by Fort Worth's police officers merely for exercising their First Amendment rights.

71. Upon information and belief, Defendant Fort Worth is liable for one or more of the following wrongful acts or omissions in violation of Mr. Turner' constitutional rights, in that (by and through its policy maker, its City Manager or Chief of Police) it:

    a. Established or enforced an unconstitutional policy, practice, procedure or allowed a custom to exist that allowed officers to prevent, harass, or chill individuals from exercising their First Amendment rights by filming or videotaping Fort Worth police department or Fort Worth police officers;

    b. Failed to establish or enforce appropriate policies and procedures to address and protect the proper exercise of the First Amendment rights by individual citizens;

    c.    Failed to establish adequate policies and procedures (or failed to enforce such policies and procedures if they existed or allowed a custom ignoring such policies and procedures to exist) regarding whether a person can be detained, seized, and arrested merely for refusing to provide his identification;

    d.    Failed to adequately train and supervise its police officers regarding the foregoing; and

    e.    At the time of the events in question, Defendant Fort Worth had failed to give its officers appropriate policies, rules and limitations concerning the wrongful interference with the exercise of the First Amendment rights of a person in order to give Fort Worth and its officers unfettered authority and "plausible deniability" in the event that the unreasonable detention and unlawful demand to see the identification of a person was questioned.

72.    As a direct and proximate result of one or more of Defendant Fort Worth's wrongful acts or omissions, Plaintiff sustained violations of his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

73.    As a direct and proximate result of the Defendant Fort Worth's wrongful acts or omissions, Mr. Turner sustained minor physical injury from illegal seizure. Further, Mr. Turner suffered damages including pain and suffering, mental anguish, and other damages as pled herein.

### VIII.   LACK OF QUALIFIED IMMUNITY

74.    Mr. Turner adopts by reference the facts and allegations set forth in paragraphs 1-73 as though fully set forth herein.

75. It is clearly established law that a person has a First Amendment right to gather information and videotape police activity, subject to reasonable time, place, and manner restrictions.

76. Defendants did not observe Mr. Turner engage in any criminal conduct and had no reasonable suspicion or probable cause to believe that Mr. Turner had committed or was committing any criminal conduct.

77. Mr. Turner was merely videotaping the police at work, which was protected by the First Amendment to the U.S. Constitution, in broad daylight from across the street, without interfering in an arrest or trespassing or interceding in a police action such as an ongoing investigation or apprehension of a suspect.

78. None of Mr. Turner's activities were being conducted in an unreasonable time, place or manner.

79. It is also clearly established law that a person has a Fourth Amendment right to be free from detention without a reasonable suspicion that a person has committed or is committing or is about to commit a crime and free from arrest without a warrant or probable cause.

80. It is also clearly established law in Texas that a person does not have to identify himself to the police unless and until he has been lawfully arrested.

81. Mr. Turner was illegally detained and arrested by handcuffing simply because Mr. Turner was videotaping in front of a Fort Worth police station and legally refused to produce his ID as demanded.

82. At all times, Mr. Turner was nonviolent, was unarmed, and made no threats to the safety of Defendants or others prior to the illegal acts of Defendants.

83. Defendants' actions violated "clearly established statutory and constitutional rights of which a reasonable officer would have known."

84. No reasonable officer confronting a situation where the officer had not observed a person engage in any criminal conduct and had no reasonable suspicion to believe that a person had engaged in, was engaging in, was about to engage in criminal conduct, and where the need for any force was clearly absent would have concluded that detaining Mr. Turner, seizing Mr. Turner, handcuffing Mr. Turner and deploying any force under such circumstances was reasonable, and therefore Defendants should not be entitled to any protection of Qualified Immunity to avoid accountability in this case.

## IX. DAMAGES AND ATTORNEY'S FEES

85. Mr. Turner adopts by reference the facts and allegations set forth in paragraphs 1-83 as though fully set forth herein.

86. As a direct and proximate result of Defendants' unlawful actions, Mr. Turner suffered deprivations of his constitutional rights guaranteed by the First, Fourth and Fourteenth Amendments of the United States Constitution.

87. Mr. Turner incurred damages for loss of reputation, shame, embarrassment, humiliation, mental anguish, pain and suffering, and such other compensatory and consequential damages as the law entitles Plaintiff to recover.

88. Mr. Turner seeks punitive damages against the individual Defendants for their intentional, willful and wanton acts completely ignoring "clearly established statutory and constitutional rights of which a reasonable officer would have known."

89. Mr. Turner hereby sues for these damages, and prays for just and fair recovery thereof.

90. Mr. Turner is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## X. PRAYER FOR RELIEF

91. For the foregoing reasons, Plaintiff respectfully requests the following:

a. Enter a declaratory judgment that the Defendants violated Plaintiff's First Amendment rights to observe and videotape police activity;

b. Enter a declaratory judgment that the Defendants violated Plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable seizure;

c. Award actual/compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

d. Alternatively award nominal damages for the violations of Plaintiff's Constitutional rights;

e. Award punitive damages against the individual Defendant Officers;

f. Enter an award for costs, expenses, and counsel fees pursuant to 42 U.S.C. § 1988(b); and

g. Enter such other relief as this honorable Court may deem just and deserving.

DATED this 12th day of January 2016.

Respectfully submitted,

By: /s/ Kervyn B. Altaffer Jr.
Kervyn B. Altaffer Jr.
State Bar No. 01116575
Altaffer & Chen PLLC
4054 McKinney Ave Ste 310
Dallas, TX 75204
Tel: 972-234-3633
Fax: 972-947-3663
Email: kervyn@altafferlaw.com

ATTORNEY FOR PLAINTIFF PHILLIP TURNER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon counsel for Defendants via mail and the ECF System, except Defendant City of Fort Worth who will be served with summons.

By: _____
Kervyn B. Altaffer Jr.