

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2016 FEB -3 AM 11:31

CLERK OF COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **PHILLIP TURNER** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:15-cv-00824-A** |
| **LIEUTENANT DRIVER,** | § | |
| **OFFICER GRINALDS, Badge 3825,** | § | |
| **OFFICER DYESS, Badge 2586,** | § | |
| Defendants. | § | |

<u>**PLAINTIFF'S RESPONSE AND BRIEF IN RESPONSE TO DEFENDANTS GRINALDS,
DYESS, AND DRIVER'S MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM AND BRIEF IN SUPPORT**</u>

KERVYN B. ALTAFFER JR.
State Bar No. 01116575

ALTAFFER & CHEN PLLC
4054 McKinney Ave., Ste. 310
Dallas, TX 75204
Tel (972) 234-3633
Fax (972) 947-3663
kervyn@altafferlaw.com

ATTORNEY FOR PLAINTIFF PHILLIP TURNER

# TABLE OF CONTENTS

I.   Introduction                                                                        1.

II.  Standard Of Review For 12(B)(6) Motion To Dismiss                                   5.

III. Summary Of Argument                                                                 5.

IV.  Plaintiff's Alleged Facts Plausibly Give Rise To An Entitlement To Relief           6.

V.   Application Of The Clearly Established Law To The Facts                              8.

    A.  First Amendment                                                                8.

        1.  Law                                                                    8.

        2.  Plaintiff's Plausible Claims For Relief                               10.

    B.  Fourth Amendment                                                              12.

        1. Law                                                                   12.

            a. Clearly Established Law As To When A Person Has To Identify Himself   12.

            b. Clearly Established Law As To When A Person Has Been Seized           13.

            c. Clearly Established Law As To When A Seizure Is Reasonable            13.

            d. Qualified Immunity                                                    13.

            e. Gratuitous Use Of Force Is Unreasonable                              14.

        2. Plaintiff's Plausible Claims And Defendants' Lack Of Qualified Immunity   14.

            a. Unreasonable Seizure At Inception And During Continuation            14.

            b.  Use of Excessive Force by Officers Grinalds and Dyess               20.

VI.   Declaratory Relief                                                                 21.

VII.  Plaintiff's Alternative Motion For Leave To Amend                                  22.

VIII. Conclusion                                                                         22.

# TABLE OF AUTHORITIES

*Adams v Williams*, 407 U.S. 143 (1972)……………………………………………………18

*Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012)………………9

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)………………………………………5

*Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)………………………………………10, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………………………5

*Buehler v. City of Austin et al*, No. A-13-CV- 1100 ML, 2015 U.S. Dist. Lexis 20878
    (W.D. Tex. Feb. 20, 2015)……………………………………..……………………8, 9, 10

*Buehler v. City of Austin et al*, No. A-13-CV-1100 ML (W.D. Tex. July 24, 2014)
    (Order denying motions to dismiss)…………………………………..9 and Addendum A

*Brown v. Texas*, 443 U.S. 47, (1979)………………………………………………...........12, 18, 19

*Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)………………………………………………14

*Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed.543, T.D. 3686 (1925)……14

*Curry v. State*, No. 06-14-00142-CR (Tex. App.—Texarkana, 2015)…………………………13

*Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992)……………………………………...9

*Fernandez v. California*, 134 S.Ct.1126, 1132, 188 L.Ed.2d 25 (2014)…………………………14

*Florida v. Bostick*, 501 U.S. 429, 437 (1991)……………………………………………………19

*Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)……………………………………10

*Glik v. Cunniffe*, 655 F.3d 78, 82, 85 (1st Cir. 2011)……………………………………………9

*Graham v. Connor*, 490 U.S. 386 (1989)…………………………………………………………14

*Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014)…………………………………………………14

*Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 124 S.Ct. 2451,
    159 L.Ed.2d 292 (2004)………………………………………………………13, 18, 19

*Hydrick v. Hunter*, 669 F.3d 937, 939, 940 (9th Cir. 2012)……………………………………..21

*Illinois v. Wardlow,* 528 U.S. 119, 124-125 (2000)……………………………………………19

*INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)…………….................13

*James by James v. Sadler,* 909 F.2d 834 (5th Cir. 1990)………………………………………….20

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)…………………………………………...5

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967)…………...............13

*Keenan v. Tejeda,* 290 F.3d 252, 259 (5th Cir. 2002)…………………………………..…..8, 10, 11

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)………...5

*Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989)………………………………………………….20

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc)……………………….…………….14

*New Jersey v. T.L.O.*, 469 U.S.325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)……………………..14

*Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008)……………………………………………….14

*Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)………………………………10

*Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)……………………………………………..11

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)…………………..…………..13

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015)………………………………………………………14

*United States v. Alvarado-Zarza*, 782 F.3d 246 (5th Cir. 2015)…………………………………18

*United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)……………..…13

*United States v. Ashley*, 3:14-cr-255 (N.D. Texas, Dallas Division, Jan. 16, 2015)…………….18

*United States v. Hill,* 752 F.3d 1029 (5th Cir. 2014) …………………….…2, 13, 15, 16, 17, 18, 19

*United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005)……………………………………………13

*United States v. Jordan,* 232 F.3d 447, 448 (5th Cir. 2000)………………………………………13

*United States v. Mask*, 330 F.3d 330 (5th Cir. 2003)……………………………………………..13

*United States v. Michelletti*, 13 F.3d 838 (5th Cir. 1994) (en banc)……………………………..13

*United States v. Sanders,* 994 F.2d 200 (5th Cir. 1993)…………………………………………..13

*United States v. Tookes*, 633 F.2d 712 (5th Cir. 1980)…………………………………..…………13

22 U.S.C. §2201…………………………………………………………………………………...4

22 U.S.C. §2202…………………………………………………………………………………...4

42 U.S.C. §1983…………………………………………………………………………...4, 5, 12, 20

42 U.S.C. §1988…………………………………………………………………………………...4

Texas Penal Code § 38.02 (a)……………………………………………………..…………...12

Texas Penal Code § 38.02 (a) (amended) ………………………………………..…………...12

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **PHILLIP TURNER** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:15-cv-00824-A** |
| **LIEUTENANT DRIVER,** | § | |
| **OFFICER GRINALDS, Badge 3825,** | § | |
| **OFFICER DYESS, Badge 2586,** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE AND BRIEF IN RESPONSE TO DEFENDANTS GRINALDS,
DYESS, AND DRIVER'S MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM AND BRIEF IN SUPPORT**

## I.   Introduction

Photography (including videotaping) is not a crime! That's right, as this is America, the home of the free.[1] Plaintiff, Phillip Turner, an amateur photographer with an interest in the activities of the police which he often records and broadcasts to the public on his website, decided he wanted to observe and videotape activity of the City of Fort Worth Police Department offices located at 1100 Nashville Ave, Fort Worth, TX 76105.  On September 1, 2015 during midday, Plaintiff was walking on the public sidewalk in plain view carrying only his video-camera and was videotaping the police station and the public activity at the station across the

---

[1] There is no general legislation against taking photos or videos. Laws that limit (none apply in this case) photography are mostly about the subject of the photo and not about the act by itself of taking photos. For instance there are statutes that make taking photos of people naked illegal without their consent (voyeurism laws). There are laws made to protect the concept of *property* from being stolen, whether a persons' image (privacy) or a person's work (copyright), or an entity's reputation (trademark). Neither the Patriot Act nor the Homeland Security Act have provisions that restrict photography in general. However, commanders of military installations can prohibit photographs of specific areas when they deem it necessary to protect national security. Government entities like the U.S. Department of Energy can forbid photographs of infrastructure they consider would be a risk to expose.

street – he was not even on the property of the police station. This videotaping by Plaintiff does not fit within any of the limited in scope laws (examples described in Note 1) that make some special photography illegal (Defendants have not alleged or shown the court that Plaintiff violated any law whatsoever, criminal or otherwise). Plaintiff contends in *Plaintiff's First Amended Complaint and Jury Demand* ("Plaintiff's Complaint" or "Dkt 15") that not only was his videotaping of the police legal, it was within his First Amendment right to gather information. Plaintiff was not interfering with traffic or any police activities, was not armed, and was not threatening anyone. Plaintiff was not violating any laws and was videotaping events occurring in the open and not behind any closed doors or in any hidden place.

**"The government attempts to put an ominous gloss on what appears almost entirely ordinary."[2]** Defendants would have the Court believe that Plaintiff's videotaping the police was suspect behavior warranting investigation of a criminal nature, regardless of the fact that it is neither a crime nor illegal in any sense. *See Defendant Officer Grinalds's Motion To Dismiss For Failure To State A Claim And Brief In Support Thereof* ("Grinalds's Motion" or "Dkt 17"), *Defendant Officer Dyess' Motion To Dismiss First Amended Complaint For Failure To State A Claim And Brief In Support Thereof* ("Dyess' Motion" or "Dkt 20"), and *Defendant Lieutenant Driver's Motion To Dismiss First Amended Complaint For Failure To State A Claim And Brief In Support Thereof* ("Driver's Motion" or "Dkt 19"). Grinalds's and Dyess' Motions begin with a virtually identical irrelevant attack on Plaintiff's character and an apparent attempt to vilify and denigrate Plaintiff for the sole reason that he likes to videotape the police.[3] (Dkt 17, Summary, pp. 6-8, II. Background, A. The Battousai, pp. 8-9 and notes 8 - 12), (Dkt 20, Summary, pp. 6-7,

---

[2] *United States v. Hill*, 752 F.3d 1029, 1034 (5th Cir. 2014) (emphasis added).
[3] It appears that Defendants' counsel went on the internet and tried to find everything that they could find that they did not like about Plaintiff and then put it in the motions to try to prejudice the Court against Plaintiff since there are no facts that support Defendants' position that they had any right to seize Plaintiff.

II. Background, A. The Battousai, pp. 8-9 and notes 8 - 12). These sections of both motions allege numerous irrelevant opinions and mischaracterized "facts" about Plaintiff not found in Plaintiff's Complaint anywhere. With no showing that Defendants had any actual knowledge of any of the information at the time of the events in this case, Plaintiff objects to these allegations as irrelevant to the Court's determination of the legal issues presented by Defendants' Motions. However, Defendants do admit that Plaintiff is a correspondent publishing his work (Dkt 17, p. 9; Dkt 20, p. 9), clearly taking it into the realm of First Amendment protection. Further, Defendants Grinalds and Dyess attempt to sway the Court by citing news reports of police confrontations occurring recently in other cities and counties. (Dkt. 17, Summary, pp. 6-8, II. Background, B. Attacks on Police and Police Stations, pp. 10 - 11, and notes 2-7, 13-14; Dkt. 20, Summary, pp. 6-8, II. Background, B. Attacks on Police and Police Stations, pp. 10 - 11, and notes 2-7, 13-14). Defendants do not allege or show any facts that Plaintiff was in any way connected, directly or even indirectly, with any of these actions in other locations. Defendants misguidedly contend that just because other people in other locations committed violence against police, this gives Defendants the right to seize anyone they want if the person is just near a police station and Defendants do not like what the person is doing.

Defendant Lieutenant Driver's Motion does not address these issues in the same way, but focuses primarily on the fact that he was not at the scene initially and is therefore not responsible or liable for what the other two Defendants did.

With no knowledge of any specific and articulable objective facts upon which to base a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit any criminal conduct, Defendants Officers Grinalds and Dyess came upon the scene and immediately demanded to see Plaintiff's ID. When he refused to show them his ID, they detained him. After

being detained, Plaintiff did not attempt to flee, did not act aggressively in any manner and did not threaten the Officers or anyone else. When he further refused to identify himself, the Officers exercised gratuitous force by grabbing Plaintiff and his camera and handcuffing Plaintiff (effectively arresting him since he was already detained and not fleeing or resisting) and turning off his camera. Plaintiff requested that a supervisor come out because of the illegal seizure of Plaintiff.   Although they were right in front of the police station, no supervisor came out immediately, and Defendants continued holding Plaintiff in the back of a police car with the windows rolled up and the air conditioning not turned on to try to force him to identify himself. When Lieutenant Driver, the supervisor, finally came out to the scene, he did not immediately release Plaintiff, but continued holding (as the senior officer in charge of the scene at that point) Plaintiff in the back of the police car, even after multiple conversations with Defendants Grinalds and Dyess. Plaintiff was finally released but only after a lecture from Lieutenant Driver and a trespass warning from Lieutenant Driver that Plaintiff would be arrested if he came back.

Plaintiff sued Defendants under 42 U.S.C. §§1983 and 1988 for the violation of his First, Fourth, and Fourteenth Amendments to the Constitution and under 28 U.S.C. §§2201 and 2202 to declare the Plaintiff's rights.

Plaintiff recorded all the conversation and interaction between Plaintiff and Defendants Grinalds and Dyess up until the time that Plaintiff was forcefully handcuffed and Defendants turned off his camera. The recording is the best evidence of the events, and if the Court is inclined to grant Defendants' Motions, Plaintiff requests leave to tender the recording to the Court for review and consideration prior to any ruling granting Defendants' Motions.

4

## II.    Standard Of Review For 12(B)(6) Motion To Dismiss

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679 (2009).  When reviewing a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court must "accept[] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  The plaintiff's complaint need not contain detailed factual allegations, but "[its] obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1964-65 (quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Iqbal*, 129 S. Ct. at 1965 (quotations, citations, and footnotes omitted).

## III.    Summary Of Argument

Plaintiff has plead sufficient facts that together plausibly give Plaintiff an entitlement to relief under 42 U.S.C. §1983 for violation of Plaintiff's constitutional rights under both the First and Fourth Amendments.  Plaintiff has plead that Defendants Grinalds and Dyess, seized (detained) Plaintiff when all he was doing was videotaping at a reasonable time, place, and manner. Then, even though Plaintiff was not threatening anyone, was unarmed, and was not attempting to flee and was not physically resisting the seizure (detention), the Officers with no

warning and for no reason gratuitously went further and grabbed Plaintiff and forcefully handcuffed him and seized and turned off Plaintiff's video-camera, apparently because Plaintiff had continued to exercise his First Amendment right to videotape the police. The initial seizure (detention) of Plaintiff was not based upon reasonable suspicion, and Defendants have not shown specific and articulable objective facts (even with the additional "new facts'" alleged in Grinalds's and Dyess' Motions) that meet Defendants' burden to point out specific articulable objective facts warranting suspicion of criminal activity. Defendants' claim of qualified immunity fail as a matter of law because Plaintiff's claims are based on clearly established law at the time of the events and constitute claims of violation of Plaintiff's constitutional rights under the First and Fourth Amendments. Defendants have not shown specific and articulable objective facts that could have lead Defendants to reasonably suspect that Plaintiff had committed, was committing, or was about to commit, a crime, considering the totality of the circumstances. Finally, if the Court determines that Plaintiff's pleadings are deficient in any respect, Plaintiff requests leave to amend his pleadings in conformity with the Court's ruling.

### IV.   Plaintiff's Alleged Facts Plausibly Give Rise To An Entitlement To Relief

Plaintiff alleged in *Plaintiff's First Amended Complaint and Jury Demand* (hereafter referred to as Plaintiff's Complaint or "Dkt 15") that he was walking on the public sidewalk across the street from the Police Station and was videotaping the Fort Worth Police Station located at 1100 Nashville Ave, Fort Worth, Texas 76105 and the activity at the station. (Dkt 15 p. 3, ll. 11, 12). Further, Plaintiff was not breaking any laws, was not acting suspiciously or furtively, was videotaping from a public sidewalk, was wearing shorts, a T-shirt, a hat, and sport shoes. (Dkt 15 p. 3, l. 13). Plaintiff was not armed with any weapon, was only carrying a video-camera, and was not threatening anyone, either by word or action. (Dkt 15 p. 4, ll. 14, 15).

6

Plaintiff was not interfering with any activities of Fort Worth Police Department or with traffic. (Dkt 15 p. 4, l. 16).

Plaintiff observed Fort Worth Police Officers Defendants Grinalds and Dyess drive up and get out of their squad car and walk across the street from the Fort Worth Police station to where Plaintiff was on the sidewalk videotaping, and Officer Grinalds immediately started asking Plaintiff for his ID. (Dkt 15 p. 4, ll. 19, 20). Plaintiff kept video-taping and after several requests by Officer Grinalds, Plaintiff, who had been doing nothing but video-taping, asked Officer Grinalds if Plaintiff was being detained. (Dkt 15 p. 4, l. 21). Officer Grinalds responded that Plaintiff was being detained for investigation. (Dkt 15 p. 4, l. 22). After the officers identified themselves, Officer Grinalds confirmed again that Plaintiff was being detained, and Plaintiff asked him for what crime he was being detained. (Dkt 15 p. 5, l. 24). Officer Grinalds said "I didn't say you committed a crime," and continued stating that he had the right to detain Plaintiff for investigation. (Dkt 15 p. 4, l. 25). Plaintiff asked Officer Grinalds what would happen if he did not identify himself, and Officer Grinalds refused to tell him. (Dkt 15 p. 5, ll. 25 - 27).

After being detained, Plaintiff, who was not armed, did not take any steps to leave or flee, did not make any threats against the Defendant Officers or anyone else, and did not take any aggressive actions to give the Defendant Officers any concern for possible bodily harm to themselves or anyone else. (Dkt 15 p. 5, l. 29). When Plaintiff still refused to produce his ID, Officers Grinalds and Dyess, without any warning or notice, forcefully seized Plaintiff and handcuffed Plaintiff, hurting Plaintiff's wrist, and took away and turned off Plaintiff's video camera. (Dkt 15 p. 5, ll. 30 - 32). Officer Grinalds then said "This is what happens when you don't ID yourself." (Dkt 15 p. 5, l. 33). Plaintiff immediately asked for a supervisor to come to

7

the scene. (Dkt 15 p. 6, l. 34). Although they were right in front of the station, no supervisor came out immediately and the Officer Grinalds and Dyess took Plaintiff across the street and put him in the back of their patrol car and left him there to sweat with the windows rolled up and no air getting into the back. (Dkt 15 p. 6, l. 38). The Officers continued to detain Plaintiff in the back seat of the car even after Lieutenant Driver came out and talked with the officers and they ignored Plaintiff banging on the door to try to get them to open the windows. (Dkt 15 p. 6, l. 40). Instead of immediately releasing Plaintiff, Lieutenant Driver continued talking with Officer Grinalds and Dyess and then he went back and forth from the officers to the car to talk with Plaintiff. (Dkt 15 p. 6, 7, ll. 40-47). Finally all three officers came back to the car and took out Plaintiff, but they refused to give him his camera immediately and continued to hold it while Lieutenant Driver lectured Plaintiff. (Dkt 15 p. 7, l. 48-50). When they finally released Plaintiff, Lieutenant Driver gave Plaintiff a criminal trespass warning even though Plaintiff had not even been on the property of the City Police Station. (Dkt 15 p. 7, l. 52).

## V.    Application Of The Clearly Established Law To The Facts

### A.    First Amendment

Plaintiff contends that the law was clearly established at the time of the events in this case, contrary to Defendants' argument that the right of Plaintiff to videotape the police in their activities was not clearly established law at the time Plaintiff was detained (seized).

### 1.    Law

The recent Texas case *Buehler v. City of Austin et al*, No. A-13-CV- 1100 ML, 2015 U.S. Dist. Lexis 20878 (W.D. Tex. Feb. 20, 2015) held that in this circuit there was a clearly established right under the First Amendment to videotape the police in the performance of their duties. *See Keenan v. Tejeda,* 290 F.3d 252, 259 (5th Cir. 2002) (retaliation for First Amendment

8

exercise is unconstitutional); *Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992) (arrest for photographing police raid where claimant did not interfere was unconstitutional). In its earlier order on motions to dismiss, the *Buehler* court extensively briefed First Amendment law including the relevant precedents in the 5th Circuit on whether a First Amendment claim existed and whether it was a clearly established rule of law at the time of the events in question. A copy of the order on the motions to dismiss, *Buehler v. City of Austin et al*, No. A-13-CV-1100 ML (W.D. Tex. July 24, 2014) (order denying motions to dismiss) is attached hereto as Addendum A for the Court's reference (pages 9 to 21). The court ruled the following in the order:

- "In sum, based on foundational principles of First Amendment law, the Court concludes that the First Amendment protects the right to videotape police officers in the performance of their official duties, subject to reasonable time, place, and manner restrictions." *Buehler*, No. A-13-CV- 1100 ML, order at 14.

- "In light of the existing Fifth Circuit precedent and the robust consensus among circuit courts of appeals, the Court concludes that the right to photograph and videotape police officers as they perform their official duties was clearly established at the time of Buehler's arrests [August and September 2012]." *Buehler*, No. A-13-CV- 1100 ML, order at 20.

In *Buehler*, the court notes that the following circuit courts have concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions: *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012) (invalidating a state eavesdropping statute as applied to the recording of police officers in the performance of their duties in traditional public fora); *Glik v. Cunniffe*, 655 F.3d 78, 82, 85 (1st Cir. 2011) (holding that there is "a constitutionally

9

protected right to videotape police carrying out their duties in public" and that the right was clearly established; noting the "fundamental and virtually self-evident nature of the First Amendment's protections in this area"); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (recognizing a First Amendment right to photograph or videotape police conduct); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a "First Amendment right to film matters of public interest"; the plaintiff was filming the activities of police officers at a protest).

As the Court found in *Buehler*, Plaintiff's First Amendment claims are based on a clearly established rule of law.

### 2. Plaintiff's Plausible Claims

In order to have a first amendment claim, Plaintiff must show three things: "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002).

With regard to the first requirement, Plaintiff plead, and Defendants' admitted, that at the time of the events in this case, Plaintiff was video-taping the police station and activities at the police station, a constitutionally protected activity as shown above.

With regard to the second requirement, the Court must consider the law on what constitutes an injury in a First Amendment Case. "[A] tort to be actionable requires injury," which, in this context, is the deprivation of a constitutional right." *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)). The question is "whether a person

of ordinary firmness would have been deterred by these ominous events from [continuing to video-tape the police]." *Keenan*, 290 F.3d at 259. The answer is "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "The focus . . . is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Keenan*, 290 F.3d at 259 (quoting *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)).

Plaintiff plead, with regard to Defendants Grinalds and Dyess, that Plaintiff was detained, was subsequently handcuffed and his camera taken from him and turned off, and was placed in the back of a police car to "sweat it out" while the Defendant police officers held him at their will. With regard to Defendant Lieutenant Driver, Plaintiff plead that Lieutenant Driver continued to hold Plaintiff in the police car for some time after he arrived and took over the scene (the Court can infer that when he arrived on the scene a lieutenant was in charge of the scene over the two officers). Further, when a decision was finally made to release Plaintiff, Lieutenant Driver would still not immediately release Plaintiff and return his camera. Instead Lieutenant Driver continued to detain Plaintiff, refusing to return his camera, while Lieutenant Driver lectured Plaintiff. Further, when Plaintiff was finally released and his camera returned to him, Lieutenant Driver informed Plaintiff that he would be arrested if he ever came back. Such actions would chill an ordinary person from continuing to video-tape the police station and the activities at the police station.

Finally with regard to the third requirement, the only activity that Plaintiff was engaged in was video-taping at the time of the events. While the Defendants might contend that such actions were not taken because of Plaintiff's video-taping, at a minimum the facts plead by

11

Plaintiff are sufficient to create a fact issue on whether the Defendants, in taking their actions against Plaintiff, were motivated by Plaintiff's videotaping the police station and activities.

## B.     Fourth Amendment

Plaintiff has asserted a claim under 42 U.S.C. §1983 that he was illegally seized (detained) without a warrant in violation of his Constitutional right to be free from unreasonable seizure pursuant to the Fourth and Fourteenth Amendments

### 1.     Law

#### (a).     Clearly established law as to when a person has to identify himself

It has been clearly established law since 1979 that before a police officer may seize (stop) an individual and demand the individual to identify himself, that officer must have at least reasonable suspicion, supported by specific and articulable objective facts, to believe that the individual had been or was about to be involved in criminal activity. *See Brown v. Texas*, 443 U.S. 47, 50-52 (1979). In 1979 when *Brown* was decided, the Texas Penal Code required a person to identify himself even when just stopped and not arrested as follows:

> § 38.02. Failure to Identify as Witness
> (a) A person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information.

*Brown*, 443 U.S. at 54, note 1. The Supreme Court found that the application of the statute to require the appellant to identify himself when stopped violated the Fourth Amendment because at the time the officers stopped the appellant, the officers lacked any reasonable suspicion, supported by specific and articulable facts, to believe appellant was engaged in or had engaged in criminal conduct. *Brown*, 443 U.S. at 52, 53.

Texas Penal Code §38.02 (a) was amended in 1987 (consistent with the *Brown* decision) to only require a person to identify himself **after the person has been "lawfully arrested."**

Texas Penal Code §38.02 (a) (Vernon's 2011). *See Curry v. State*, No. 06-14-00142-CR (Tex.

App. – Texarkana 2015) (copy attached in Addendum A).

### (b).   Clearly established law as to when a person has been seized

As an initial matter, because **a "seizure" under the Fourth Amendment must be "justified at its inception,** "we must determine when Hill was seized within the meaning of the amendment. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). A seizure begins when "all the circumstances surrounding the incident" are such that "a reasonable person would have believed that he was not free to leave." *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (citation omitted); *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003).

*United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (emphasis added).

### (c).   Clearly established law as to when a seizure is reasonable

Warrantless searches and seizures are "per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). The rule of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), represents "a very narrow exception." *United States v. Tookes*, 633 F.2d 712, 715 (5th Cir. 1980).

Under *Terry*, if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer may briefly detain--that is, "seize" --the person to investigate. *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000) (discussing *Terry*). "Such a belief must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'" *United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). In determining whether the officer's suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered. *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). **The government has the burden of proving the specific and articulable facts that support the reasonableness of the suspicion. *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005)**.

*United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (emphasis added).

### (d).   Qualified Immunity

"The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Morgan v. Swanson , 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011))." As the text makes clear, "reasonableness" is "the ultimate touchstone of the Fourth Amendment." *Fernandez v. California* , 134 S.Ct.1126, 1132, 188 L.Ed.2d 25 (2014) (internal quotation marks omitted); *see also New Jersey v. T.L.O* ., 469 U.S.325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) ("[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable . . . ." ); *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed.543, T.D. 3686 (1925) ("The Fourth Amendment is to be construed in light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens.")."

Trent v. Wade, 776 F.3d 368 (5th Cir. 2015).

### (e)    Gratuitous use of force is unreasonable

To establish an excessive force claim, [Plaintiff] must show "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)). To gauge the reasonableness of the force used, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We ask whether the Officers' actions were objectively reasonable at the time rather than from "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. **It is clearly established that use of gratuitous force against a detainee who has been subdued and restrained is unreasonable. *Bush*, 513 F.3d at 501–02.**

### 2.    Plaintiff's Plausible Claims and Defendants' Lack of Qualified Immunity

### a.    Unreasonable Seizure at Inception and During Continuation

Regardless of whether the Court finds that Plaintiff's First Amendment claims are recognizable, Plaintiff alleged facts in Plaintiff's Complaint that establish his plausible right to

14

his Fourth Amendment claims. (See the facts alleged in Section IV above.)   Early on in Plaintiff's pleading of the recorded conversation timeline, Defendant Officer Grinalds unequivocally told Plaintiff multiple times that Plaintiff was detained, thus establishing the time of inception of Plaintiff's seizure. (Dkt 15 p. 4, l. 22, p. 5, ll. 24-25).   Assuming all such facts plead by Plaintiff are true, when combined such facts are sufficient to plausibly give rise to an entitlement to relief by Plaintiff for Defendants' violation of Plaintiff's constitutional right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.

In an attempt to show specific and articulable objective facts that would support a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime, Defendants plead "new" facts not in Plaintiff's Complaint, to which Plaintiff has objected. (Dkt 17, pp. 6-11; Dkt, 20, pp. 6-10). However, for purposes of Defendants' Motions To Dismiss, even if the Court accepts such "new" facts, Plaintiff contends that Defendants have still not met their burden to show "specific and articulable objective facts that support a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime."

Defendants' Motions with regard to Defendants' contentions/claims that Defendants had "reasonable suspicion" to seize Plaintiff and thus have the protection of qualified immunity are best addressed initially by explaining, just as the Court did in *United States v. Hill,* "**the sorts of circumstances the government [Defendants in this case] did *not* show**." *Hill,* 752 F.3d at 1034 (emphasis added). Just as in *Hill,* the Defendants in this case have not alleged facts to show any of the following: that Defendants were responding to any report of **criminal** activity; that Defendants had any particular reason to think that crime was happening there where Plaintiff was engaged in the activity of videotaping at the moment of Defendants' arrival; that Plaintiff matched the description of anyone sought by the police; or that Defendants had a "hunch" that

Plaintiff might be involved in criminal activity and then observed him for a "sufficient time to determine that criminal activity indeed reasonably appeared to be afoot." *Hill,* 752 F.3d at 1034. Just as in *Hill,* Defendants do not show any facts that Plaintiff made any suspicious movements or that Plaintiff verbally threatened Defendants or anyone or that Plaintiff made any threatening gestures in the few seconds or minutes before Defendant Officer Grinalds told Plaintiff that he was detained. *Hill,* 752 F.3d at 1034. However, unlike in *Hill,* Defendants in this case do not even allege any facts that tend to show that the location of Plaintiff's activities was a "high crime" area or that Plaintiff's activities were being conducted at an unusual time or place or manner. Defendants have not offered any specific objective facts to show and, have not even contended, that Plaintiff attempted to flee when the Defendant Officers approached him or when Plaintiff was told he was detained. Defendants have not offered any facts to show that Plaintiff appeared unusually nervous.

In *Hill,* the Fifth Circuit found that the government did not satisfy its burden to point out specific articulable facts warranting suspicion of criminal activity. *Hill,* 752 F.3d at 1038. Although the officers are not required to show that they suspected a particular criminal act, they must show that they actually suspected criminal activity. *See U.S. v. Hill,* 752 F.3d at 1033 "[L]aw enforcement [must] point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or about to commit, a crime."

The Fifth Circuit held the government did not satisfy its burden even though the police officers in *Hill* found a firearm on Hill's person after the initial seizure of Hill. *Hill,* 752 F.3d at 1031. Hill's possession of the firearm was clearly illegal because Hill had been convicted of a felony and Hill was arrested and charged with illegal possession of a firearm and ammunition. *Hill,* 752 F.3d at 1032. Unlike in *Hill,* Plaintiff in this case was not in possession of a firearm or

16

any weapon of any type (Dkt 15, p. 4, ll. 14, 15).  The Court stated that the fact that Hill might have been armed and dangerous could not even be considered in determining reasonable suspicion to seize Hill because Hill's firearm was not discovered by the police until after the initial seizure of Hill.  *Hill,* 752 F.3d at 1031 and at 1039, note 9. Thus any alleged "new" facts Defense counsel contend they discovered on the internet about Plaintiff are just plain irrelevant.

In attempting to establish the "totality of the circumstances," Defendants have alleged "new" facts not in Plaintiff's Complaint that Defendants claim show that violent crimes were committed and directed at police in other counties (but none were alleged by Defendants to have occurred in Tarrant County or the City of Fort Worth or the exact site where Plaintiff was videotaping). (Dkt. 17, Summary, pp. 6-8, II. Background, B. Attacks on Police and Police Stations, pp. 10 - 11, and notes 2-7, 13-14; Dkt. 20, Summary, pp. 6-8, II. Background, B. Attacks on Police and Police Stations, pp. 10 - 11, and notes 2-7, 13-14).  At least in *Hill,* the Defendants claimed that the crimes not plead by Plaintiff were in the same county and thus were relevant to the totality of the circumstances. *Hill,* 752 F.3d at 1035. However, just as in *Hill,* Defendants in this case have not shown any facts that connect Plaintiff in this case in any manner, directly or indirectly, with these "new" facts involving crimes against the Police in other counties. *Hill,* 752 F.3d at 1035 (nor did he connect the homicides to Hill in any other manner whatsoever). The Fifth Circuit found that such evidence "tells us almost nothing about whether the police had reasonable suspicion to seize [Plaintiff] at one [location], in one single town within the county." *Hill,* 752 F.3d at 1035. Further, in this case Plaintiff was clearly and unrebutted carrying only a video camera and the "new" cases Defendants are asking the Court to consider in the totality of the circumstances all involve persons armed with weapons firing multiple shots at police and police stations.

The facts in *United States v. Hill* have numerous and substantial parallels to the facts before this Court in this case. However, Defendants failed to bring to the Court's attention *Hill* and other recent cases in this circuit and this district[4] with some similar substantial facts supporting a denial of the government's claim to qualified immunity based upon "reasonable suspicion."

Instead, Defendants presented multiple district court decisions with very different facts not present in this case and argue general law about reasonable suspicion and investigatory stops and totality of the circumstances. Defendants claim that they had a basis to stop Plaintiff because he was "filming the building's security gate and the private vehicles of police officers entering and leaving it." (Dkt 17, pp. 6, 10; Dkt, 20, pp. 6, 10). However, Defendants point to no law that exempts such items from being photographed or filmed, no law that makes such items "secret", and no warnings to anyone in Plaintiff's position that such items should not be videotaped.

Defendants argue that Plaintiff's refusal to identify himself or produce an identification card prior to his seizure, or during his seizure but prior to his arrest, constituted a refusal to cooperate and thus a basis to seize Plaintiff, citing *Adams v Williams*, 407 U.S. 143 (1972) and *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004). (Dkt 17, pp. 12-13; Dkt 20, pp. 12-13). Such argument was laid to rest long ago by the Supreme Court in *Brown v. Texas*, 443 U.S. 47 (1979). As Plaintiff explained in this Brief in paragraph V.B.1.(a.), in Texas a person does not have to provide his identification until the person has already been arrested, and failure to provide identification cannot be a basis for "reasonable suspicion" to initially seize a person. *See Brown v. Texas*, 443 U.S. at 50-52.

---

[4] *United States v. Alvarado-Zarza*, 782 F.3d 246 (5th Cir. 2015) (no reasonable suspicion based upon police officer's mistake of law); *United States v. Ashley*, 3:14-cr-255 (N.D. Texas, Dallas Division, January 16, 2015) (no reasonable suspicion based upon similar factors considered by the Fifth Circuit in *United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014).

*Adams* was decided in 1972, seven years before *Brown v Texas* in 1979. In *Hiibel,* the issue was whether a state with a "stop and identify statute" (which Texas does not currently have and did not have at the time of *Hiibel*) could lawfully arrest a person for failure to identify himself **after** the person had been stopped pursuant to the requirement in *Brown* that "that the initial stop [must be] based on specific, objective facts establishing reasonable suspicion to believe the suspect was involved in criminal activity." *See Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 180-184 (2004). *Hiibel* started after *Brown* left off and did not change the decision in *Brown v. Texas. Hiibel,* 542 U.S. at 184.

Further, in a Terry stop, individuals have a right to ignore the police, and "any refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Illinois v. Wardlow,* 528 U.S. 119, 124-125 (2000) (quoting *Florida v. Bostick,* 501 U.S. 429, 437 (1991)).

Due to the fact that Plaintiff's seizure at the inception was not based upon reasonable suspicion, any continued seizure, even based upon facts discovered after the inception such as the discovery of the firearm on Hill (or the alleged new facts Defendants contend they found on the internet about the Plaintiff in this case), would be illegal. *United States v. Hill,* 752 F.3d 1029 (5th Cir. 2014). Thus Defendants' contentions that Lieutenant Driver would have a reasonable time to investigate are without merit where the seizure is illegal at its inception. Further, Defendant Driver was not a mere bystander, but participated in the illegal seizure by continuing to keep Plaintiff handcuffed and locked in the police auto after Defendant Driver arrived and took charge (Dkt 17 p. 10, ll. 93-96). Further continuing to detain Plaintiff for a lecture after the decision to release Plaintiff had been made is also an illegal continuation of the seizure. As such,

Defendant Driver is also liable for the continuation of the illegal seizure of Plaintiff. *James by James v. Sadler*, 909 F.2d 834 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989).

Based upon Defendants' Motions To Dismiss, including the "new facts" alleged by Defendants (which Plaintiff does not agree should be considered in a motion to dismiss), Defendants have not met their burden to show specific and articulable objective facts that support a reasonable suspicion at the instance of Plaintiff's initial seizure, that Plaintiff had committed, was committing, or was about to commit a crime. As a result, Defendants are not entitled to qualified immunity and, even if considered by this Court, the "new" facts alleged by Defendants are still not sufficient to defeat Plaintiff's claims under 42 U.S.C. §1983 for violation of Plaintiff's Constitutional right under the Fourth Amendment to be free from unreasonable seizure.

**b.**   **Use of Excessive Force by Officers Grinalds and Dyess**

Since the seizure at its inception was made without reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime, any use of force thereafter violated Plaintiff's Fourth Amendment right.  Plaintiff alleged facts that show, at the time that Defendants Grinalds and Dyess forcefully grabbed Plaintiff and placed handcuffs on him too tightly injuring him. However, Plaintiff had already been seized by Defendant Officer Grinalds telling Plaintiff that he was detained (illegally as set forth above) and any use of force thereafter was gratuitous because, after being informed that he was detained, Plaintiff:

1.      Did not commit any aggressive or violent acts (Dkt 15, p. 5, ll. 29);

2.      Did not make any threats to Officers Grinalds and Dyess or anyone else (Dkt 15, p. 5, ll. 29);

3.      Did not attempt to flee or act nervous in any way (Dkt 15, p. 5, ll. 29);

4.      Did not commit any type of criminal activity (See Dkt 17 pp. 5-7);

5.      Was never told that he was suspected of any specific crime  (Dkt 15, p. 5, l. 25) ;

6.      Was not warned in any manner (Dkt 15, p. 5, l. 31); and

7.      Was injured by the handcuffing (Dkt 15, p. 5, l. 31).

Further, Officers Grinalds and Dyess refused to tell Plaintiff what they would do to him if he

continued to refuse to identify himself  (even though failure to identify was not a crime)  (Dkt

15, p. 5, ll. 24-25).

Based upon the legal considerations set forth in paragraph V.B.1.(e) and the facts plead

by Plaintiff, Plaintiff has plead sufficient facts to support a claim that there was no force

necessary and therefore the handcuffing was unreasonable per se and would constitute a

gratuitous use of force, as well as being illegal because the seizure was illegal at its inception.

## VI.      Declaratory Relief

Defendants have moved to dismiss the claims for declaratory relief on the grounds that

the Court should do it because the court has the inherent power and it is duplicative of Plaintiff's

other claims. (Dkt 17, p. 19; Dkt 20, pp. 23-24) However, this is not the case. If the individual

Defendants prevail on their claims to qualified immunity, then it would immunize them from

Plaintiff's claims for money damages, but not from Plaintiff's claims for a declaratory judgment

that Plaintiff's constitutional rights were violated. *Hydrick v. Hunter*, 669 F.3d 937, 939, 940

(9th Cir. 2012) ("Qualified immunity is only an immunity from a suit for money damages [under

42 U.S.C. §1983], and does not provide immunity from a suit seeking declaratory or injunctive

relief."). Therefore, Plaintiff could proceed with a declaratory judgment action even if the Court

found that Defendants were entitled to the protection of qualified immunity, and there is no basis

to dismiss the declaratory judgment action of Plaintiff.

## VII.        Plaintiff's Alternative Motion For Leave To Amend

In the event the Court determines that it will grant all or part of Defendants' Motions To Dismiss, Plaintiff requests leave of court to conduct discovery as to qualified immunity (if such be necessary) and leave to amend his lawsuit in accordance with the what the discovery reveals and in accordance with findings of the Court.

## VIII.        Conclusion

Plaintiff has plead facts that show that Defendants violated Plaintiff's Constitutional rights under the First Amendment to videotape activities of the police subject to reasonable time, place, and manner restrictions. Further the right to videotape the activities of the police under the First Amendment was "clearly established" at the time of the challenged conduct.

Further, Plaintiff has plead facts that show Defendants' violated Plaintiff's Constitutional right to free from unreasonable seizure under the Fourth Amendment and the rights with regard to Plaintiff's Fourth Amendment claims were "clearly established" at the time of the challenged conduct.  Defendants' additional new facts plead in Defendants' Motion To Dismiss do not meet Defendants' burden to show specific and articulable objective facts that establish under the totality of the circumstances the reasonableness of Defendants' actions in seizing Plaintiff, and as a result, Defendants' Motion should be denied with regard to claims of qualified immunity, and the Court does not need to render any further order pursuant to Federal Rule of Civil Procedure 7 with regard to Defendants' allegations.

Plaintiff's claims for declaratory relief are not duplicative of Plaintiff's claims for money damages and should not be dismissed.

Wherefore, Plaintiff prays that the Court deny Defendants' Motions To Dismiss and lift the order staying discovery, and, in the alternative, that the Court grant Plaintiff leave to conduct discovery and then amend his pleadings.

BY: _____

Kervyn B. Altaffer, Jr.
State Bar No. 01116575

ALTAFFER & CHEN PLLC
4054 McKinney Ave., Ste. 310
Dallas, TX 75204
Tel (972) 234-3633
Fax (972) 947-3663
kervyn@altafferlaw.com

ATTORNEY FOR PLAINTIFF PHILLIP TURNER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Electronic Case Filing System for the Northern District of Texas and electronic notice of this filing was given to counsel for Defendants via the ECF System.

BY: _____

Kervyn B. Altaffer, Jr.

23